IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID LAVELLE THOMPSON, | ) | CASE NO. 1:15 CV 2169 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| PARIS TOLBERT, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] in this prisoner civil rights action arising under 42 U.S.C. § 1983[2] is a motion by defendants Paris Tolbert and Kathy Jennings to dismiss the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.[3] *Pro se* plaintiff David Lavelle Thompson has not responded to the motion.

For the reasons stated below, I will recommend that the motion should be granted and the matter be dismissed in part with prejudice and partially without.

## Facts

The facts relevant to adjudicating the present motion are neither complex nor disputed, and appear in the pleading.

---

[1] ECF # 5.

[2] ECF # 1.

[3] ECF # 7.

Since 1983 Thompson has been serving a life sentence in prison as a result of his convictions for murder and aggravated robbery.[4] As stated in the complaint and its supporting attachments, Thompson, on January 19, 2014, was transported by prison officials from a prison medical center to the Ohio State University Hospital.[5] Upon arriving at the hospital, Jennings attempted to unlock the door of the van in which Thompson was a passenger but accidentally broke the key off in the lock.[6] As a result, Thompson remained in the van - attended to by Jennings - for approximately one hour while another key was retrieved.[7]

Thompson alleges that because he was being transported to the hospital for back surgery, he was dressed in only light "surgical garb," and that the temperature that day was -5 degrees.[8] He further contends that the van was known to have inadequate heat and that he had wet his clothing by the time he arrived at the hospital.[9] Moreover, he asserts that the prison transport staff had no blankets or heaters available to keep Thompson warm while they waited for another key.[10]

---

[4]*See,* http://www.drc.ohio.gov/offendersearch.

[5]ECF # 1 at 3; Attachment 1 (grievance disposition) at 4.

[6]ECF # 1-1 at 4.

[7]*Id*. at 4.

[8]ECF # 1 at 4.

[9]*Id*.

[10]*Id*.

In the exhibit attached to the complaint[11] setting forth the results of a prison investigation into Thompson's complaint, the inmate accident report filed on this event showed that after the van was opened Thompson walked into the hospital unaided and that medical reports from the hospital indicated that "there were no injuries sustained by you [from being in the van] and there have been no lasting effects from the unfortunate accident."[12]

Nevertheless, in this suit against Tolbert and Jennings in both their official and individual capacities[13] Thompson claims that when he was finally taken into the hospital, he had to be placed under "several blankets" and near "space heaters" to "overcome hyupothermia [*sic*] and frost-bite."[14] He argues that the use of a transport van with known problems with heating, and the failure to have blankets in the van, constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and was negligent in light of the foreseeable risks.[15] He maintains that as a result of this conduct, he suffered exposure to cold, and incurred hypothermia and frost-

---

[11]Although matters outside of the pleadings are not considered in adjudicating a motion under Rule 12(b)(6), any exhibits attached to the complaint are deemed part of the pleading and so may be reviewed in connection with a motion to dismiss under Rule 12(b)(6). *Dixon v. Nusholtz*, 187 F.3d 635 (6th Cir. 1999)(unpublished table decision); *see also*, Fed. R. Civ. P. 10(c).

[12]ECF # 1-1 at 4.

[13]*Id*. at 2-3.

[14]ECF # 1 at 4.

[15]*Id*. at 4-5.

bite.[16] He seeks an injunction requiring that he be transported in the future in only safe, heated and ventilated vehicles.[17] He prays for $100,000 in compensatory and punitive damages, plus an award of $25,000 in attorney fees and an assessment of costs against the defendants.[18] He also asserts that the conduct at issue was a dereliction of duty under Ohio law.[19]

## Analysis

**A.      Standard of review - Rule 12(b)(6)**

In adjudicating a motion to dismiss for failure to state a claim upon which relief may be granted the court is required to "accept all well-pleaded allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff."[20] Although the complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[21] Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[22] In that regard, "[a] claim has

---

[16]*Id*. at 5.

[17]*Id*. at 6.

[18]*Id*.

[19]*Id*. at 5.

[20]*Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007).

[21]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[22]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]

**B.     Application of standard - the motion to dismiss should be granted**

*1.     The monetary claims against the two individual defendants in their official capacity are barred under § 1983 and by the Eleventh Amendment.*

As is well-settled, § 1983 claims against state employees in their official capacities are deemed claims against the state itself.[24] Stated differently, states, state agencies and state employees sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983.[25] Thus, Thompson's claims for monetary damages against Tolbert and Jennings in their official capacities fail to allege cognizable claims against them under § 1983. Moreover, these defendants are also immune from suit in their official capacity under the Eleventh Amendment.[26]

But, both § 1983 and the Eleventh Amendment permit prospective injunctive relief in matters where individual state employees are sued in their official capacities.[27]

Therefore, all claims for monetary damages against Tolbert and Jennings asserted against them in their official capacities should be dismissed.

---

[23]*Id.*

[24]*Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

[25]*Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989).

[26]*Id.*

[27]*Id.* at 71, n.10; *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000).

2. *The claims do not state a claim for relief under § 1983 for violation of a state policy or custom.*

Insofar as the claims here are understood not as claims against these individuals but as claims against the state of Ohio, it is well-settled that in order to assert a cognizable § 1983 claim against a government entity Thompson must show that the state itself was the wrongdoer, the proximate cause of any constitutional injury.[28] To do so, the plaintiff may employ one of five theories:

a. Express policy;

b. Widespread practice, though not authorized in written law or in express policy nevertheless is so permanent and well-settled as to constitute a custom or usage with the force of law;

c. A decision of a person with policy-making authority;

d. A failure to act where the inadequacy of the existing policy is so likely to result in a violation of constitutional rights that the policy-maker can reasonably be said to be deliberately indifferent to the plaintiff's rights;

e. Ratification of the government entity of its employees unconstitutional acts by failing to meaningfully investigate and punish allegations of unconstitutional conduct.[29]

Here, Thompson has done nothing to establish a right to relief under any cognizable theory. Specifically, he has not alleged the existence of an official state policy to expose prisoners to extreme cold conditions. Further, he has not alleged that there is a widespread

---

[28] *Cline v. City of Mansfield*, 745 F.Supp.2d 773, 790-91 (N.D. Ohio 2010)(citations omitted).

[29] *Id*. at 791 (citations omitted).

practice of exposing prisoners to such conditions such as would be so extensive and permanent as to have the force of law. In addition, there is no allegation that his period of time in the transport van under the conditions alleged was the result of a decision of any person with policy-making authority for the State of Ohio. Moreover, he has not alleged that a policy maker failed to act in situation where such failure could reasonably be said to constitute deliberate indifference to Thompson's rights. Finally, by including the record of the State's investigation into this incident as part of his complaint, Thompson has essentially shown that there was no failure by the State to meaningfully investigate his allegation of misconduct.

### *3.  The claims do not state a claim for relief under the Eighth Amendment*.

As the Supreme Court recognized in *Hafer v. Melo*,[30] state employees may be personally liable under § 1983 for acts taken in performance of their official duties.[31] As such, because the real party at interest in an individual capacity suit is the individual and not the governmental entity, it is not necessary that a plaintiff first establish any link between the conduct at issue and a governmental policy or custom.[32] Rather, liability arises upon a showing that the defendant abused his position under state law to deprive the defendant of constitutional rights.[33]

---

[30]*Hafer v. Melo,* 502 U.S. 21 (1991).

[31]*Id*. at 31.

[32]*Id*. at 25.

[33]*Id*. at 27.

That said, the Sixth Circuit teaches, an Eighth Amendment conditions of confinement claim has two elements:

> First, the depravation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the prison official's state of mind [must be] one of deliberate indifference to inmate health and safety.[34]

Regarding the first prong - the objectively serious nature of the depravation - the United States Supreme Court has held that routine discomforts do not constitute Eighth Amendment violations, but rather "extreme deprivations are required to make out a conditions-of-confinement claim."[35] In that regard, while exposure to very cold temperatures may rise to the level of a constitutional violation,[36] the "circumstances, nature, and duration of a deprivation ... must be considered in determining whether a constitutional violation has occurred."[37]

In weighing those factors in the context of a claim arising out of exposure to cold temperatures, the court in *Spencer* pointed out that regularly sending inmates outside in the Michigan winter without hats, gloves or boots would constitute an Eighth Amendment

---

[34]*Spencer v. Bouchard,* 449 F.3d 721, 728 (6th Cir. 2006)(citations omitted), *abrogated on other grounds by Stoudemire v. Michigan Dept. Of Corrections*, 614 Fed. Appx. 798 (6th Cir. 2015).

[35]*Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

[36]*See, e.g*., *Palmer v. Abdalla*, 2012 WL 4473206, at * 4 (S.D. Ohio Sept. 4, 2012)(citing cases).

[37]*Spencer*, 449 F.3d at 728 (internal quotation and citation omitted).

violation.[38] Similarly, requiring inmates to sleep each night in cold cells while not issuing blankets may also constitute a constitutional violation.[39]

But, without an allegation that Thompson was exposed to cold temperatures on a repeated or continuing basis, merely being exposed to some degree of cold temperatures in a single instance for only one hour, does not rise to the level of an Eighth Amendment violation.[40] In addition, the absence of any physical injury, as demonstrated in the investigation report attached to, and made a part of the pleadings, also supports the finding that no constitutional injury occurred.[41]

As to the second prong of establishing an Eighth Amendment violation - evidence that the prison official's state of mind was one of "deliberate indifference" to Thompson's health and safety - there is no allegation going to that point. Indeed, the pleadings do not allege that during the brief time in the locked van that Thompson ever asked Jennings - who remained in the van with Johnson - for a blanket or other covering, or that Jennings then refused to provide assistance. At best, and even assuming the existence of a cognizable injury,

---

[38]*Id*. (citing *Knop v. Johnson*, 977 F.2d 996, 1012-13 (6th Cir. 1992)).

[39]*Id*. (citing *Wilson v. Seiter,* 501 U.S. 294, 304-05 (1991); *Franklin v. Franklin,* 215 F.3d 1326, at * 4 (6th Cir. 2000)(unpublished table decision)).

[40]*Wells v. Jefferson County Sheriff Dept*., 159 F.Supp.2d 1002, 1011 (S.D. Ohio 2001), *aff'd*, 35 Fed. Appx. 142 (6th Cir. 2002).

[41]*See, Richmond v. Settles,* 450 Fed. Appx. 448, 455 (6th Cir. 2011)("In the absence of evidence that the prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment.").

Thompson has alleged some form of negligence as to the use of a van with faulty heating, but "deliberate indifference" entails something more than negligence.[42]

Because I recommend that the Eighth Amendment claims be dismissed as not stating a claim upon which relief may be granted, I do not address the defendants's argument that they are entitled to qualified immunity.[43]

### 4.     *The Court should decline jurisdiction over any state law claims.*

The Sixth Circuit has stated the well-known rubric for addressing supplemental jurisdiction as follows:

> As restated by the Sixth Circuit in *Gamel v. City of Cincinnati*[44] the doctrine of supplemental jurisdiction as codified by 28 U.S.C. § 1367 "grants a district court broad discretion to decide whether to exercise jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same claim or controversy."[45] In determining whether to retain jurisdiction over state law claims after claims arising under a court's original jurisdiction have been dismissed, "a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'[46] But "[w]hen all the federal claim are dismissed before trial, the balance of considerations usually

---

[42]*Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[43]ECF # 7 at 5-7.

[44]*Gamel v. City of Cincinnati*, 625 F.3d 949 (6th Cir.2010).

[45]*Id*. at 951 (quoting 28 U.S.C. § 1367).

[46]*Id*. (Quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L.Ed.2d 720 (1988)).

will point to dismissing the state law claims, or remanding them to state court if the action was removed."[47]

Accordingly, if the Court accepts the recommendation as to dismissing all the federal claims, the Court should then decline jurisdiction over the remaining state law claims and dismiss them without prejudice.

## Conclusion

For the reasons stated, I recommend granting the defendants's motion to dismiss.[48] Thompson's federal constitutional claims should be dismissed with prejudice for failing to state a claim upon which relief can be granted. The Court should decline to exercise supplemental jurisdiction over the state law claims and therefore, dismiss them without prejudice.

Dated: April 29, 2016                    s/ William H. Baughman, Jr.
                                         United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[49]

---

[47] *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir.1996)(citing *Carnegie-Mellon*, 484 U.S. at 350).

[48] ECF # 7.

[49] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).